UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MI WINDOWS & DOORS, LLC., et al.

    Plaintiffs,

v.                                                                          CASE NO. 8:14-cv-3139-T-23MAP

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

    Defendant.

_____/


**ORDER**

The plaintiffs are window and sliding glass door manufacturers that purchased

commercial liability insurance from the defendant.  In 2002, non-parties sued the

plaintiffs in Alabama for defective products that caused water damage.  The

defendant defended the plaintiffs in the underlying actions, which eventually settled.

After the defendant refused to indemnify the plaintiffs, the plaintiffs sued for breach

of contract.  "It was [the defendant's bad faith] handling of these claims — including

coverage litigation that ensued arising out of [the plaintiffs'] request for coverage —

that gives rise to this action . . . ."  (Doc. 11 at 2)  In this action, the plaintiffs sue

under Section 624.155(1)(b)(1), Florida Statutes, which requires an insurance

company to attempt in good faith to settle a claim.

Arguing that Alabama, not Florida, substantive law governs this action, the defendant moves (Doc. 5) to dismiss.  Predictably, the plaintiffs respond (Doc. 11) in support of Florida substantive law.  "A federal district court sitting in diversity must apply the choice of law rules of the forum state."  *Noonan v. Vermont Mut. Ins. Co.*, 761 F. Supp. 2d 1330, 1334 (M.D. Fla. 2010) (Presnell, J.); *accord Am. Family Life Assur. Co. of Columbus, Ga. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989).  Accordingly, Florida's choice-of-law rules govern whether Alabama's or Florida's substantive law governs this action.

Citing *BDO Seidman, LLP v. British Car Auctions, Inc.*, 802 So. 2d 366 (Fla. 4th DCA 2001) (Klein, J.), the plaintiffs argue for ignoring Florida's usual choice-of-law rules.  *BDO Seidman*, 802 So. 2d at 368, held that if a "statute is clear[] and on its face is applicable to th[e] action for damages . . . [and] also constitutional . . . , it should be applied without engaging in a conflict of laws analysis."  The plaintiffs assert that Section 624.155(1)(b)(1) is constitutional and is "applicable on its face" and is thereby applicable without respect to Florida's usual choice-of-law rules.  (Doc. 11 at 5)  Section 624.155(1)(b)(1) states:

> Any person may bring a civil action against an insurer when such person is damaged:
>
> . . . .
>
> (b) By the commission of any of the following acts by the insurer:

> 1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests . . . .

Even assuming the Supreme Court of Florida has not overturned *BDO Seiman*,[1] *BDO Seiman* is inapplicable to Section 624.155(1)(b)(1). *BDO Seiman* considered Section 768.79(1), Florida Statutes, which purports to apply to "any civil action for damages filed in the courts of [Florida]." *BDO Seiman* held that Section 768.79(1) "clearly" overrode Florida's usual choice-of-law rules. However, Section 624.155(1)(b)(1), like most statutes, has no clause (not even an ambiguous clause) that overrides Florida's choice-of-law rules.[2] Thus, in this action, Florida's traditional choice-of-law rules govern. *Higgins v. W. Bend Mut. Ins. Co.*, 85 So. 3d

---

[1] *See Southeast Floating Docks, Inc. v. Auto-Owners Ins. Co.*, 82 So. 3d 73, 82 (Fla. 2012) ("[T]he reasoning of the Fourth District in *BDO Seidman . . .* is erroneous and we disapprove . . . to the extent [it] conflict[s] with our opinion today.").

[2] Implicitly conceding that Section 624.155(1)(b)(1) contains no provision overriding Florida's usual choice-of-law rules, the plaintiffs cite Section 624.11(1), which states, "No person shall transact insurance in this state . . . without complying with the applicable provisions of this code." The plaintiffs argue that under Section 624.11(1) "Chapter 624 [in its entirety and] by its own terms applies to all insurance companies transacting any insurance related activities in Florida, regardless of the type of policy, regardless of where the policy was issued or delivered, and regardless of the place where the claim arose." (Doc. 11 at 5 (footnote omitted)) Describing the same argument as "flawed in many respects," *Pastor v. Union Central Life Insurance Co.*, 184 F. Supp. 2d 1301, 1306–07 (S.D. Fla. 2002) (Gold, J.), considers and, at length, persuasively rejects the plaintiffs' argument. In short, Section 624.11(1) concerns only Chapter 624's "applicable provisions," but Florida's choice-of-law rules govern whether Section 624.155(1)(b)(1) is "applicable" in this action. Further, unlike the statute in *BDO Seidman*, which applied to "any civil action for damages filed in the courts of [Florida]," Section 624.11(1) fails to "clearly" override Florida's choice-of-law rules. For further contrast, see *Sanchez v. Sanchez De Davila*, 547 So. 2d 943 (Fla. 3d DCA 1989) (Hubbart, J.) (considering a clear statute that states, "The law of this state . . . shall govern all aspects [of the dispute] . . . regardless of the citizenship, residence, location, or domicile of any other party.").

1156, 1158 (Fla. 5th DCA 2012) (Cohen, J.) ("Contract choice-of-law principles

apply to bad faith actions."); *Clifford v. Commerce Ins. Co.*, 2009 WL 3387737, at *1

(S.D. Fla. Oct. 16, 2009) (Hoeveler, J.) (applying Florida's choice-of-law rules to

determine whether Florida's substantive law governs the plaintiff's bad faith claim);

*Pastor v. Union Cent. Life Ins. Co.*, 184 F. Supp. 2d 1301, 1308 (S.D. Fla. 2002)

(Gold, J.) (same), *aff'd*, 128 Fed. Appx. 100 (11th Cir. 2005).

Assuming for the sake of argument that Florida's usual choice-of-law rules

govern this action, the plaintiffs argue that *Pastor* — which at least one court has

explicitly rejected[3] — governs this action.  *Pastor* held that in Florida *lex loci contractus*

governs a bad faith claim.[4]  *Pastor* first relied on *Nationwide Mutual Insurance Co. v.*

*McNulty*, 229 So. 2d 585, 586 (Fla. 1969), which held that a bad faith claim arises

under contract law, not tort law.  Without explanation, *Pastor*, 184 F. Supp. 2d

at 1306, stated, "Because an action for statutory bad faith sounds in contract, not tort,

the doctrine of *lex loci contractus* determines the applicable law in this case."

*Pastor* depends on an oversimplification; not every contract claim is governed

by *lex loci contractus*.  "Questions bearing on the interpretation, validity, and

obligation of contracts are substantive and governed by the rule of *lex loci contractus*,"

---

[3] *Clifford*, 2009 WL 3387737, at *2 ("The Court acknowledges the different result in *Pastor v. Union Central Life Ins. Co.*, 184 F. Supp. 2d 1301 (S.D. Fla. 2002).").

[4] *Lex loci contractus* "provides that the laws of the jurisdiction where the contract was executed govern." *Higgins*, 85 So. 3d at 1158.

but "questions related to the manner or method of performance under a contract are determined by the law of the place of performance." *Higgins*, 85 So. 3d at 1158. *McNulty* holds that a bad faith claim sounds in contract but avoids determining which choice-of-law rules govern a contract claim.  However, *Government Employees Insurance Co. v. Grounds*, 332 So. 2d 13, 14–15 (Fla. 1976), explains that a bad faith claim "goes to . . . performance under the contract (or lack thereof), and matters concerning performance are determined by the law of the place of performance." *Accord Shin Crest Pte, Ltd. v. AIU Ins. Co.*, 2008 WL 728388, at *2 (M.D. Fla. Mar. 17, 2008) (Bucklew, J.) ("[In accord with *Grounds*,] even though a bad faith claim is an action *ex contractu*, a bad faith claim relates to the insurance company's performance (or lack thereof) under the contract, and matters concerning performance are governed by the law of the place of performance."). *Pastor* failed to mention *Grounds*, which is especially troubling because *Grounds* is "[t]he seminal and only Florida [Supreme Court] case that discusses the applicable choice of law principle in bad faith actions . . . ." *Higgins*, 85 So. 3d at 1158.  Accordingly, *Pastor*'s first reason (*McNulty*) for applying *lex loci contractus* to a bad faith claim is unpersuasive.

Pastor relied not only *McNulty* but also on *Allstate Insurance Co. v. Clohessy*, 32 F. Supp. 2d 1328, 1331 (M.D. Fla. 1998) (Kovachevich, J.).[5]  Like *Pastor*, *Allstate* failed

---

[5] *Pastor* advances several policy arguments that are not considered in this order. Even if *Grounds* should hold otherwise, *Grounds* is binding precedent.

to mention *Grounds*. Further, *Allstate* cited no precedent reaching a similar holding. Finally, *Allstate* only partially supports *Pastor* because *Allstate* held that in Florida *lex loci contractus* governs "first-party bad faith claims," not all bad faith claims.

To the extent that *Pastor* and *Allstate* stand for the proposition that all bad faith claims in Florida are governed by *lex loci contractus*, *Pastor* and *Allstate* stand athwart *Grounds*, which binds a court applying Florida law. However, both *Pastor* and, especially, *Allstate*[6] might comport with *Grounds* (narrowly construed) if either *Pastor* or *Allstate* holds that *lex loci contractus* governs a "first-party bad faith claim" but not a "third-party bad faith claim."

*Grounds* contains nothing that suggests *Grounds* is limited to third-party claims, and most courts construe *Grounds* accordingly. *E.g., Clifford*, 2009 WL 3387737, at *1 (holding that *Grounds* requires the law of a state in which "the conduct giving rise to the plaintiff's bad faith claim took place"); *Gallina v. Commerce & Indus. Ins.*, 2008 WL 4491543, at *6 (M.D. Fla. Sept. 30, 2008) (Whittemore, J.) ("[Under *Grounds*,] the choice of law rule that governs is not the law of *lex loci contractus*, but rather, the law

---

[6] *Pastor*, 184 F. Supp. 2d 1301 at 1306, suggests that *lex loci contractus* governs every bad faith claim:

> *Pastor* contends that *McNulty* is inapplicable to this case because it involved a third party's common law claim for good faith, whereas this case involves a first party's statutory claim for good faith. Such an argument presents a distinction without a difference, for Fla. Stat. § 624.155 does nothing more than extend the common law remedy of third parties to insurance contracts to first parties.

of place of performance."), *aff'd*, 375 Fed. Appx. 935 (11th Cir. 2010) (per curiam);

*Shin Crest*, 2008 WL 728388, at *2 ("[In accord with *Grounds*,] a bad faith claim is . . .

governed by the law of the place of performance."); *Teachers Ins. Co. v. Berry*, 901 F.

Supp. 322, 324 (N.D. Fla. 1995) (Stafford, J.) ("[In accord with *Grounds*,] the choice

of law rule that governs is not the law of *lex loci contractus*, but rather, the law of place

of performance."); *see also Morgan v. Gov't Employees Ins. Co.*, 2012 WL 4377790, at *6

(M.D. Fla. Aug. 22, 2012) (Morris, Mag. J.) (suggesting that the law of the place of

performance governs all bad faith claims in Florida), *adopted*, 2012 WL 4377780

(M.D. Fla. Sept. 25, 2012) (Howard, J.).[7]   Nonetheless, in a thorough opinion,

*Higgins* rejects the majority and holds that *Grounds* governs third-party bad faith

claims but not first-party bad faith claims.[8]   *Higgins*, 85 So. 3d at 1159, explains:

> There is an important distinction, however, between *Grounds* and
> this case that hinges on the fundamental difference between first-

---

[7] The plaintiffs assert that *Grounds*, *Gallina*, and *Shin Crest* are inapplicable because each considers a common law, not statutory, claim for bad faith. However, the plaintiffs neither explain why the distinction affects the holding nor cite precedent relying on the distinction. Importantly, neither *Grounds* nor *Gallina* nor *Shin Crest* notes that the complaint alleges the bad faith claim under common law (only review of the complaint reveals that the plaintiff alleges a common law claim), and none limits its holding to a common law claim. The reasoning of each is applicable equally to a statutory claim. The same is true for *Teachers*, whose complaint is inaccessible. Further, the plaintiffs ignore *Clifford*, in which the complaint failed to identify whether the claim alleged common law or statutory bad faith. *Clifford* resolves the motion to dismiss without needing to clarify. Finally, in response to *Morgan*, the plaintiff states that *Morgan* "applied Georgia law." (Doc. 11 at 9) However, *Morgan*, 2012 WL 4377790, at *6, "applyi[es] Florida choice of law principles."

[8] *Valiant Insurance Co. v. Progressive Plumbing, Inc.*, 2007 WL 2936241 (M.D. Fla. Oct. 9, 2007) (Hodges, J.), resolves a plaintiff's motion to dismiss a breach of contract counterclaim and a bad faith counterclaim. Without discussing the third-party–first-party distinction, *Valiant* holds that *lex loci contractus* governs the bad faith claim. Like *Pastor*, *Valiant* includes no discussion of *Grounds*.

and third-party bad faith actions. A bad faith insurance action is based on the insurer's breach of its duty to its insured to properly or promptly defend a claim, which may include the duty to make a good faith offer of settlement within the policy limits. A first-party bad faith claim is generally, if not exclusively, brought by the injured insured; while a third-party claim may be filed by the insured tortfeasor or the injured third party.

(citation omitted).[9]   Thus, *Higgins* holds that *lex loci contractus* governs first-party bad faith claims.

"The terminology used to differentiate among types of bad faith claims can be quite confusing." *Progressive Exp. Ins. Co. v. Scoma*, 975 So. 2d 461, 465 (Fla. 2d DCA 2007) (Altenbernd, J.).   For example, "third-party claim" is used to describe both a "'first party's third-party claim' and a 'third party's third-party claim.'" *Scoma*, 975 So. 2d at 466.   Fortunately, because the plaintiffs in this action assert a third-party bad faith claim, this action is unaffected by the distinction, if any, between the narrow interpretation of *Grounds* (defended best by *Higgins*) and the broad interpretation of *Grounds* (accepted by the majority of courts).

Using a simplified label, "third-party claim," the defendant persuasively argues that the plaintiffs' claim is a first party's third party claim (i.e., a third-party claim):

[A] coverage such a [personal injury protection] or [uninsured motorist] which provides a direct benefit to the insured is called first-party coverage. But, "liability coverage that protects the insured from claims or lawsuits filed by other parties and requires the insurance company to

---

[9] Recognizing that the Florida Supreme Court might hold otherwise, *Higgins* justifies its holding under both *lex loci contractus* and the rule in *Grounds*. 85 So. 3d at 1159 ("Even if the law of the place of performance applies . . .").

> provide the defense for such claims is often referred to as 'third-party coverage.'" The term "third-party claim" refers to an action brought by any person alleging that the insurer acted in bad faith concerning a claim arising under third-party coverage. [The plaintiffs'] complaint is framed as a classic third-party bad faith claim, because the crux of the complaint is that [the defendant] acted improperly by not defending the Alabama Lawsuits correctly and not paying benefits under the policies to settle those third-party lawsuits.

(Doc. 5 at 9–10 (quoting *Progressive*, 975 So. 2d at 466))[10]  In the response, the

plaintiffs decline to address the issue.  (*See* Doc. 11 at 9 n.9 ("[The defendant]'s

distinction between first- and third-party claims is irrelevant to this Court's

analysis."))  Accordingly, under either the narrow or broad interpretation of *Grounds*,

the plaintiffs' bad faith claim is governed by the law of the state of performance.

"[T]he place of performance [is] . . . where the [underlying] cause of action

against [the plaintiffs] was maintained and was defended by [the defendant]."

*Grounds*, 332 So. 2d at 15; *accord Morgan*, 2012 WL 4377790, at *6 ("[T]he place of

performance was Florida [because] Florida is where the underlying lawsuit against

---

[10] The defendant also states:

> Plaintiff cannot convert the third-party claim at issue into a first-party claim by arguing that the parties litigated the entitlement to reimbursement for the amount of money that Plaintiff paid to settle the Alabama Lawsuits or that Liberty Mutual somehow acted in bad faith during the process of that litigation. The entirety of the dispute between the parties, and the crux of any allegations of bad faith by Liberty Mutual, all arises from the third-party liability coverage afforded by the policies to cover the claims for liability brought by third parties in the Alabama Lawsuits. Therefore, regardless of how Plaintiff may try to frame the issues, the bad faith claim is third-party bad faith, and therefore the correct choice of law analysis is the one that applies to third-party bad faith claims.

(Doc. 5 at 10 n.7)

Plaintiff was brought, maintained, defended, mediated, and where negotiation for settlement occurred."); *Clifford*, 2009 WL 3387737, at *1 ("Florida law controls bad faith insurance issues in cases where the underlying personal injury or wrongful death lawsuit was brought and defended in Florida and where settlement negotiations took place in Florida . . . ."); *Gallina*, 2008 WL 4491543, at *6 (holding that performance occurred in Florida because the injury, the underlying action, and the underlying settlement negotiations occurred in Florida); *Shin Crest*, 2008 WL 728388, at *2 ("The place of performance in this case was Florida, because that it where the lawsuits against Plaintiffs were maintained and defended by Defendant."); *Teachers Ins.*, 901 F. Supp. at 324 ("[T]he place of . . . performance . . . is Florida [because] Florida is [where] the [underlying] action . . . was brought, maintained, defended, and where negotiation for settlement [occurred] . . . .").

In a final effort to save the complaint, the plaintiffs argue that the complaint fails to establish the place of performance. However, review of the complaint reveals that the plaintiffs sue for the defendant's alleged bad faith in litigating the Alabama actions, which non-parties alleged against the plaintiffs and which the defendants defended on behalf of the plaintiffs. (Doc. 2 ¶¶ 17, 52) Thus, Alabama is the place of performance, and Alabama substantive law governs the bad faith claim challenging

that performance.[11]  Because the complaint alleges the only claim under Florida law,

not Alabama law, the defendant's motion (Doc. 5) to dismiss is **GRANTED**.  The

complaint is **DISMISSED**.  No later than **MARCH 12, 2015**, the plaintiffs may

amend the complaint.

ORDERED in Tampa, Florida, on February 20, 2015.

_(signature)_

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[11] The complaint appears to allege that the defendant violated Section 624.155(1)(b)(1) both in the Alabama (products liability) litigation and in the indemnity litigation. The plaintiffs' response indicates that the indemnity litigation occurred in Florida. Neither the defendant nor the plaintiffs cite precedent considering an action with underlying disputes that occurred in different states. The plaintiff ignores the problem, and (in another context) the defendant states:

> Plaintiff cannot [sue under Florida law] by arguing that the parties litigated [in Florida] the entitlement to reimbursement . . . or that Liberty Mutual somehow acted [in Florida] in bad faith during the process of that litigation. The entirety of the dispute between the parties, and the crux of any allegations of bad faith by Liberty Mutual, all arises from the third-party liability coverage afforded by the policies to cover the claims for liability brought by third parties in the Alabama Lawsuits.

(Doc. 5 at 10 n.7) This order need not resolve the issue because (1) the complaint contains no allegation of the venue of the indemnity litigation and (2) the complaint's only claim challenges — under Florida's bad faith statute — performance that occurred in Alabama. Even if the plaintiffs can sue under Section 624.155(1)(b)(1) for only the Florida bad faith performance, this complaint challenges both the Alabama performance and the Florida performance in a single claim.

- 11 -