UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MI WINDOWS & DOORS, LLC.,
et al.,

      Plaintiffs,

v.                                                                    CASE NO. 8:14-cv-3139-T-23MAP

LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

      Defendant.

_____/

## ORDER

      MI Windows & Doors and MI Home Products (collectively, MI Windows) are

window and sliding-glass-door manufacturers that purchased commercial liability

insurance from Liberty Mutual.  In 2002, non-parties sued MI Windows in Alabama

for defective windows and doors that caused water damage.  Liberty Mutual

defended MI Windows in the Alabama actions, which in 2006 settled for

approximately $4.6 million — approximately $3 million for the damage to the

windows and doors and $1.6 million in "consequential damages" (damage that the

windows and doors caused).  In 2007, after Liberty Mutual refused to indemnify MI

Windows despite a policy limit that exceeded $4.6 million, MI Windows sued

Liberty Mutual in Florida "for breach."  (Doc. 28 ¶ 38)  On October 17, 2013, a final

judgment awarded MI Windows approximately $1.6 million against Liberty Mutual.

The judgment included only the "consequential damages" because the insurance

policy excluded from coverage damage to MI Windows' products.

In this action, MI Windows sues under Alabama law for Liberty Mutual's "bad

faith" "failure to settle" the Alabama lawsuit and sues under Florida law for Liberty

Mutual's "statutory bad faith" in refusing to indemnify MI Windows.  Liberty

Mutual moves (Doc. 31) to dismiss.

## 1. Count I — Alabama Bad Faith Failure to Settle[1]

The parties agree that under Alabama law a two-year limitation applies to a

failure-to-settle claim.  Liberty Mutual argues that the two years began on August 14,

2006, the day of MI Windows' last payment under the settlements.  Alternatively,

Liberty Mutual argues that the two years began in October 2007, when MI Windows

filed a civil remedy notice "accusing [Liberty Mutual] of bad faith and unfair

settlement practices."  (Doc. 31 at 11)[2]  MI Windows responds that the two years

---

[1] The complaint labels Count I a "bad faith" claim, and the allegations describe "intentional[]" and "bad faith" acts. Nonetheless, MI Windows' response to the motion to dismiss describes Count 1 as pleading a negligent failure-to-settle claim. (Doc. 34 at 9) Elsewhere in the response, MI Windows conflates negligent and bad faith failure to settle. (Doc. 34 at 9) Although the two are similar and are frequently discussed as one, bad faith failure to settle and negligent failure to settle are distinct. *Mutual Assur., Inc. v. Schulte*, 970 So. 2d 292, 296 (Ala. 2007) ("[The claimants] have stated two claims . . . : one alleging negligent failure to settle and one alleging bad-faith failure to settle. . . . [T]hese are in fact two distinct claims."). Despite the description in the response, Count I alleges a bad faith failure-to-settle claim because "[a] plaintiff may not amend his complaint via a response to a motion." *King v. Bank of Am. Corp.*, 2015 WL 1976427, at *2 n.4 (M.D. Ga. Apr. 30, 2015) (Lawson, J.).

[2] As described by Liberty Mutual, a civil remedy notice "is a notice that an insured must file under Fla. Stat. § 624.155, the Florida bad faith statute, which informs the insurer that the insured deems it to be in bad faith and gives the insurer an opportunity to cure the alleged bad faith." Liberty Mutual argues that the civil remedy notice "is irrelevant for purposes of the merits" of Count I but "is relevant in that it shows [MI Windows'] knowledge of the factual basis for its bad faith claim, for purposes of application of the Alabama statute of limitations." (Doc. 31 at 11 n.11)

- 2 -

began on October 17, 2013, the day the judgment in the Florida indemnity action became final.

No Alabama precedent squarely addresses the issue presented under Count I. Specifically, no Alabama precedent establishes when the limitation applicable to a failure-to-settle claim begins if the insured's policy limit exceeds the insured's liability and the insurer disputes indemnity. Nonetheless, Alabama precedent in similar circumstances offers guidance.

Most Alabama precedent considers a circumstance in which the insured's liability exceeds the insured's policy limit. *Federal Ins. Co. v. Travelers Cas. & Sur. Co.*, 843 So. 2d 140 (Ala. 2002); *Evans v. Mut. Assur., Inc.*, 727 So. 2d 66, 67 (Ala. 1999); *State Farm Mut. Auto. Ins. Co. v. Hollis*, 554 So. 2d 387 (Ala. 1989); *Turner Ins. Agency v. Cont'l Cas. Ins. Co.*, 541 So. 2d 471 (Ala. 1989); *Hartford Accident & Indem. Co. v. Cosby*, 173 So. 2d 585 (Ala. 1965); *Waters v. Am. Cas. Co.*, 73 So. 2d 524 (Ala. 1953); *American Mut. Liab. Ins. Co. of Bos., Mass. v. Cooper*, 61 F.2d 446 (5th Cir. 1932) (Bryan, J.). If the insured's liability exceeds the insured's policy limit, an insured may sue the insurer for failure to settle after the insured's underlying litigation concludes. *Evans*, 727 So. 2d at 68 (affirming that a failure-to-settle claim "does not accrue unless and until the claimant obtains a final judgment in excess of the policy limits"); *Hartford Accident*, 277 Ala. at 602, ("[T]he statute of limitations did not begin to run until the final affirmance of the judgment [against the insured]."); *American Mut.*, 61 F.2d at 448 ("The cause of action did not accrue until the judgment [against

- 3 -

the insured] was affirmed by the Supreme Court of Alabama and was satisfied by [the

insured] . . . ."); *see also Linkenhoger v. Am. Fid. & Cas. Co.*, 152 Tex. 534, 539 (1953)

("[The insured] could not have maintained th[e] present suit [for failure to settle]

until . . . final judgment in the former case."), *cited with approval in Hartford Accident*,

277 Ala. 585.

Although most precedent holds that the two-year limitation for a failure-to-

settle claim begins when the insured's liability becomes final, the reasoning of the

precedent suggests a different result when the insured's policy limit exceeds the

insured's liability and the insurer disputes indemnity.

*Hartford Accident*, 277 Ala. at 602, holds "that the statute of limitations did not

begin to run until the final affirmance of the judgment" against the insured in the

underlying action.  However, an important distinction emerges between *Hartford*

*Accident* and this action.  In *Hartford Accident*, the judgment against the insured

exceeded the insured's policy limit.  *Hartford Acc.*, 277 Ala. at 598 (stating that "[t]he

amount of the policy was $25,000" but that the underlying "suit . . . resulted in a

judgment . . . in the amount of $75,000, and costs of court").  But MI Windows'

policy limit exceeded MI Windows' liability.  In *Hartford Accident*, no indemnity

dispute could moot the insured's failure-to-settle claim because the existence of the

insured's damages became final with the insured's liability even though the extent of

the insured's damages could change depending on the result of an indemnity dispute.

In Alabama, "[a] cause of action accrues . . . regardless of whether the full amount of

the damage is apparent at the time of the first legal injury." *Chandiwala v. Pate Const. Co.*, 889 So. 2d 540, 543 (Ala. 2004). Accordingly, *Hartford Accident* holds that "the final affirmance of the judgment" begins the limitation. However, in this action, a judgment of complete indemnity would have entirely mooted MI Windows' failure-to-settle claim. Thus, the limitation began when MI Windows and Liberty Mutual resolved indemnity.

*Hartford Accident*'s reasoning comports with deferring the beginning of the applicable limitation if the insured's policy limit exceeds the insured's liability and the insurer disputes indemnity. *West Pratt Coal Co. v. Dorman*, 161 Ala. 389, 391 (1909) — upon which *Hartford Accident* relies — describes the general rule for when a claim should accrue:

> [I]f the thing complained of is not necessarily injurious, or is not an invasion of the rights of another, of itself affording no cause of action, then whatever of legal injury may result from it furnishes a cause of action accruing when the injury occurs, and then the statute of limitations commences to run.

*West Pratt* is somewhat ambiguous. Is "thing complained of" (the failure to settle) "necessarily injurious" if the insured pays a judgment that the insurer might indemnify? *Hartford Accident* and the other authority cited in *Hartford Accident* clarify that an insurer's failure to settle becomes "necessarily injurious" when the insurer's complete lack of a duty to indemnify is finally established.

*Linkenhoger v. American Fidelity & Casualty Co.*, 152 Tex. 534, 536 (1953), upon which *Hartford Accident* relies, resolves whether an insured's limitation should

"beg[i]n to run at the time of the rejection of the last offer of settlement" or at the time "the judgment became final against" the insured. *Linkenhoger* holds that the applicable limitation began when the "judgment became final against" the insured. *Linkenhoger*, 152 Tex. at 539, explains:

> [The insured] could not have maintained th[e] present suit [for failure to settle] until such time as his liability and the extent thereof had been determined by a final judgment in the former case. Until then his rights had not been invaded by [the insurer]'s failure to accept the terms of settlement offered and the tort was not complete.

*Hartford Accident*, 277 Ala. at 602, further explains *Linkenhoger*:

> It was only upon the contingency of an unconditional affirmance that it could be said that there had been an invasion of [the insured]'s rights which were necessarily in[j]urious to him. Had the case been reversed or had a remittitur been ordered reducing the amount of the . . . judgment to within the policy limits, no cause of action would then have been possessed by th[e insured].

*Linkenhoger* (and *Hartford Accident*'s description of *Linkenhoger*) clarifies that, in the ordinary circumstance (that is, when the policy limit exceeds the insured's liability), the applicable limitation begins at the conclusion of the underlying litigation, including any appeals. Importantly, *Linkenhoger* and *Hartford Accident* hold that the applicable limitation begins after, not when, the district court enters a judgment against the insured.

Under Rule 8(a), Alabama Rules of Appellate Procedure, an "appellant [is] not . . . entitled to a stay of execution of the judgment pending appeal . . . unless the appellant executes bond with good and sufficient sureties . . . in an amount equal to 150% [or 125%, depending on the circumstance,] of the amount of the judgment." In

other words, when the district court enters judgment against the insured, the insured must pay the judgment, post a bond that exceeds the judgment, or face the prospect of immediate execution and levy.[3]  Nonetheless, *Hartford Accident* and *Linkenhoger* hold that the limitation begins not at the entry of the judgment, not at the issuance of an execution on the judgment, and not at the posting of the supersedeas bond but at the conclusion of the litigation, that is, at the moment when the existence of (but not necessarily the extent of) the insured's liability becomes final.

In sum, *Hartford Accident* and *Linkenhoger* demonstrate that a failure-to-settle claim accrues — and the limitation applicable to the claim begins — not when the insured must pay but when both the insured's liability and the insurer's (at least partial) lack of a duty to indemnify become final.  In the usual circumstance, that is, when the insured's liability exceeds the policy limit, the limitation begins at the conclusion of the appeal, even if the judgment creditor immediately executes on the judgment or the insured supersedes the judgment.  In determining the accrual of the claim, an execution and a supersedeas bond are ignored because "the case [could] be[] reversed or ha[ve] a remittitur . . . ordered reducing the amount of the . . . judgment to within the policy limits."  *Hartford Accident*, 277 Ala. at 602.  Similarly, if the policy limit exceeds the insured's liability and the insurer denies indemnity, the applicable limitation begins not when the insured pays the judgment creditor but

---

[3] The appellate rule in Texas is the same. *Street v. Honorable Second Court of Appeals*, 756 S.W.2d 299, 301 (Tex. 1988) (discussing *Linkenhoger* and stating that "[a] judgment which is not superseded can, of course, be executed upon regardless of its appellate status").

when the indemnity dispute is finally resolved, at least in part, in favor of the insurer. The insured's payment to the judgment creditor at the conclusion of the underlying litigation is ignored because the insurer might fully indemnify the insured; the law defers accrual of the insured's claim until the insurer definitively either pays or fails to pay.

*Evans v. Mutual Assurance, Inc.*, 727 So. 2d 66 (Ala. 1999), offers further support for a delayed accrual of a failure-to-settle claim if the insured's policy limit exceeds the insured's liability and the insurer disputes indemnity.  In *Evans*, the insured's policy limit exceeded the insured's liability, but the insurer nonetheless agreed to fully indemnify the insured.  Affirming that a failure-to-settle claim "does not accrue unless and until the claimant obtains a final judgment in excess of the policy limits," *Evans*, 727 So. 2d at 68, offers this reasoning:

> It is clear from [the insured]'s complaint that he was never subject to a final judgment ordering the payment of money that [the insured] personally — and not his insurer — would have to pay, and that [the insurer]'s paying the settlement absolved [the insured] of any personal liability.

*Evans*'s application of the accrual rule demonstrates that a failure-to-settle claim accrues when the insured, not the insurer, becomes "personally" liable, that is, becomes liable for an amount that the insured "and not his insurer" will pay.  *Federal Ins. Co. v. Travelers Cas. & Sur. Co.*, 843 So. 2d 140, 144 (Ala. 2002) (summarizing *Evans* as holding that "a bad-faith-failure-to-settle claim does not exist where the insured is subject to no personal loss from a final judgment").

In this action, although MI Windows (not Liberty Mutual) paid the settlement, the parties disputed indemnity until Florida courts agreed in part with Liberty Mutual and ordered Liberty Mutual to indemnify MI Windows only for a portion of the settlements.  MI Windows' claim accrued at the moment that the Florida judgment partially relieved Liberty Mutual of the duty to indemnify MI Windows (that is, the applicable limitation began the moment MI Windows definitively incurred "personal" liability for an amount that Liberty Mutual would not pay). Under *Hartford Accident*, *Linkenhoger*, and *Evans*, the limitation applicable to MI Windows' failure-to-settle claim began on October 17, 2013, the day the judgment in the Florida indemnity action became final.

To support an earlier triggering of the limitation, Liberty Mutual cites *Hartford Accident*, 277 Ala. 596, *Penn National Mutual Casualty Insurance Co. v. Ipsco Steel (Alabama), Inc.*, 2008 WL 192972 (S.D. Ala. Jan. 21, 2008) (Steele, J.), and *Sanders Hyland Corp. v. Amerisure Insurance Co.*, 2009 WL 1537872 (S.D. Ala. May 29, 2009) (Milling, Mag. J.).  As discussed above, *Hartford Accident* supports MI Windows.

*Penn National*, an uncited, unpublished opinion that cites no support, weakly supports Liberty Mutual.  In *Penn National*, the insured settled a claim by a non-party, and the policy limit exceeded the settlement amount.  The insurer sued for a declaration of no duty to defend and no duty to indemnify.  The insured moved to add a counterclaim for failure to settle, but the insurer described the amendment as futile because the insured settled for less than the policy limit.  *Penn National*,

2008 WL 192972, at *3 & n.3, concedes that at least six Alabama decisions support

the proposition that "a cause of action arising out of a failure to settle a third-party

claim made against the insured does not accrue unless and until the claimant obtains

a final judgment in excess of the policy limits." (citing *Federal Ins.*, 843 So. 2d 140;

*Evans*, 727 So. 2d 66; *State Farm Mut. Auto. Ins. Co. v. Hollis*, 554 So. 2d 387 (Ala.

1989); *Turner Ins. Agency v. Cont'l Cas. Ins. Co.*, 541 So. 2d 471 (Ala. 1989); *Hartford

Accident*, 173 So. 2d 585; *Waters v. Am. Cas. Co.*, 73 So. 2d 524 (Ala. 1953)).

However, *Penn National*, 2008 WL 192972, at *3, explains that each of those opinions

"involved verdicts against the insured above policy limits; none involved a pre-trial

settlement below policy limits, and so none addressed that situation." (footnote

omitted).

   *Penn National*, 2008 WL 192972, at *3, holds that the usual rule of "[r]equiring

a judgment in excess of policy limits [is sensible] when the insurer accepts coverage,

because such an insurer will necessarily pay an entire judgment within policy limits,

freeing the insured from personal loss." But "the absolute requirement for a cause of

action for wrongful failure to settle is not a judgment in excess of policy limits

(although this often weeds out such claims) but personal loss to the insured." *Penn

Nat.*, 2008 WL 192972, at *3. Thus, under *Penn National*, 2008 WL 192972, at *3, an

insured may counterclaim for failure to settle even if the policy limit exceeds the

insured's liability if (1) the "insurer denies coverage or defends under a reservation of

rights while challenging coverage," and (2) the insured has paid a settlement or

judgment.[4]  *Penn National* never mentions the applicable limitation, *Penn National*

implicitly holds that, before indemnity is resolved, an insured may sue for failure to

settle.

For at least one of two reasons, *Penn National* comports with deferring the onset

of the two-year limitation.  First, *Penn National* decides that an insured may allege a

claim; *Penn National* never holds that the applicable limitation began.  In Alabama,

"a statute of limitations begins to run in favor of the party liable from the time the

cause of action 'accrues.'  *The cause of action 'accrues' as soon as the party in whose favor it*

*arises is entitled to maintain an action thereon.*"  *Freeman v. Holyfield*, ___ So. 3d ___, 2015

WL 1779550, at *3 (Ala. Apr. 17, 2015).  Nonetheless, considering a circumstance

similar to *Penn National*'s, *Street v. Honorable Second Court of Appeals*, 756 S.W.2d 299

(Tex. 1988), holds that the an insured may sue for failure to settle before the

applicable limitation begins.  Specifically, *Street*, 756 S.W.2d at 301–02, "reaffirm[s]

the decision of *Linkenhoger* that the statute of limitations will not begin to run until all

appeals have been exhausted" but holds that an insured may nonetheless sue for

failure to settle "if [the judgment against the insured] disposes of all issues and parties

---

[4] *Penn National* responds to *Federal Insurance*, 843 So. 2d at 145, which states:

> This Court has on several occasions addressed the tort of negligent or bad-faith
> failure to settle. *Each time, the Court has held that a cause of action arising out of a*
> *failure to settle a third-party claim made against the insured does not accrue unless and*
> *until the claimant obtains a final judgment in excess of the policy limits.*

*Penn National*, 2008 WL 192972, at *3, explains that, rather than requiring in each instance an
underlying judgment that exceeds the policy limit, *Federal Insurance* merely describes a historical
trend "involv[ing] verdicts against the insured above policy limits [but] no[t] involv[ing] a pre-trial
settlement below policy limits."

in the case, the trial court's power to alter the judgment has ended, and execution on the judgment, if appealed, has not been superseded." *Street*, 756 S.W.2d at 302, explains, "No valid public policy is served by forcing an insured to bring an action which may ultimately prove unnecessary." Thus, *Penn National* could comport with deferring the onset of the two-year limitation if *Penn National* is construed as holding that, even though the applicable limitation had not begun, the insured could sue for failure to settle.

Alternatively, *Penn National* might comport with deferring the onset of the two-year limitation because *Penn National* considers a different circumstance. In *Penn National*, the insured alleged failure to settle as a counterclaim to the insurer's claim for a judgment declaring no duty to indemnify. The failure-to-settle claim presented an alternative theory for holding the insured liable for the money paid in the underlying litigation. *Penn National* could resolve the personal liability dispute (that is, the indemnity dispute) before resolving the failure-to-settle claim.

*Sanders Hyland Corp. v. Amerisure Insurance Co.*, 2009 WL 1537872 (S.D. Ala. May 29, 2009) (Milling, Mag. J.), Liberty Mutual's third-cited opinion, discusses the accrual of a claim for "bad faith refusal to honor insurance benefits." *Sanders*'s general holding offers minimal analysis and fails to override the specific failure-to-settle analysis in *Hartford Accident*, *Linkenhoger*, and *Evans*.

**2. Count II — Florida Statutory Bad Faith Refusal to Indemnify**

MI Windows' sues under Section 624.155, Florida Statutes, for bad faith refusal to indemnify. Liberty Mutual argues that Count II "duplicates" Count I. (Doc. 31 at 12) Although Count II contains allegations relevant only to Count I, MI Windows' persuasively explains how Counts I and II fundamentally differ:

> [MI Windows'] claim for . . . failure to settle is premised on the circumstances that existed during the time that settlement for policy limits was possible. It rests on allegations . . . [that] settlement was possible[ and that Liberty Mutual] should have settled the Alabama lawsuits in order to protect [MI Windows] from the risk of an excess liability. By comparison, [the Count II] bad faith claim rests upon allegations that Liberty's interpretation of the insurance contract and subsequent refusal to indemnify [MI Windows] for covered losses lacked good faith.

(citations and footnote omitted). Nonetheless, Paragraph 68, which Count II encompasses, asserts three claims under Florida law.[5] Paragraph 68 violates Rule 10(b), Federal Rules of Civil Procedure, which states, "If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ."

---

[5] Paragraph 68 states:

> As a result of Liberty Mutual's wrongful refusal to properly defend and to indemnify [MI Windows] in the five underlying . . . lawsuits and Florida indemnity action, Liberty Mutual has violated Fla. Stat. § 624.155(1)(b)(1) by not attempting to settle the claims when, under all the circumstances, it could and should have done so had it acted fairly and honestly toward its insured and with due regard for its insured's interests.

(Doc. 28 at 20)

Liberty Mutual argues for dismissal of Count II under the litigation privilege.

Liberty Mutual cites *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d

380, 384 (Fla. 2007), for a favorable description of the privilege:

> The litigation privilege applies across the board to actions in Florida,
> both to common-law causes of action, those initiated pursuant to a
> statute, or of some other origin. "Absolute immunity must be afforded
> to any act occurring during the course of a judicial proceeding . . . so
> long as the act has some relation to the proceeding."

(quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*,

639 So. 2d 606, 608 (Fla. 1994)).  *Echevarria*, 950 So. 2d at 384, further explains:

> Importantly, the policy reasons for adopting a rule of immunity for
> actions taken in judicial proceedings focus on the judicial nature of the
> proceedings . . . . It is the perceived necessity for candid and
> unrestrained communications in those proceedings, free of the threat of
> legal actions predicated upon those communications, that is at the heart
> of the rule. The nature of the underlying dispute simply does not
> matter. . . . "Just as participants in litigation must be free to engage in
> unhindered communication, so too must those participants be free to
> use their best judgment in prosecuting or defending a lawsuit without
> fear of having to defend their actions in a subsequent civil action for
> misconduct."

(quoting *Levin*, 639 So. 2d at 608).

Liberty Mutual argues that the litigation privilege applies in this action because

Count II alleges that "Liberty Mutual 'shifted' legal positions, took positions that

were 'contrary to law,' 'ignored policy provisions,' 'disregarded decisions' in other

cases, and stonewalled [MI Windows] on paying the judgment" and because "[e]very

single one of these allegedly nefarious acts could have been brought to the attention

of the [Florida state] court." (Doc. 31 at 17)  Liberty Mutual confuses the litigation

privilege, which protects an "act occurring during the course of a judicial

proceeding," *Echevarria*, 950 So. 2d at 384, not an "act[ that] could . . . be[] brought to the attention" of the judge who presided over a judicial proceeding.  (Doc. 31 at 17)

    *Century Senior Services v. Consumer Health Benefit Ass'n*, 770 F. Supp. 2d 1261 (S.D. Fla. 2011) (Martinez, J.), explains the correct application of the litigation privilege despite a defendant's similar argument otherwise.  In *Century Senior*, the plaintiff filed an interpleader action, and the defendant counterclaimed.  The plaintiff argued for dismissal of the counterclaim because the defendant "became aware of [the plaintiff]'s role with respect to" the defendant's counterclaim "due to the interpleader complaint."  *Century Sr.*, 770 F. Supp. 2d at 1265.  *Century Senior*, 770 F. Supp. 2d at 1265, explains the plaintiff's error:

> [The defendant]'s counterclaim does refer at times to this interpleader action. To the extent that any of [the defendant]'s counterclaims are based upon the fact that [the plaintiff] filed an interpleader action or upon the allegation that the factual assertions in [the plaintiff]'s interpleader complaint are false, those portions of the counterclaims are barred by the litigation privilege. The Court notes, however, that the core allegations of [the defendant]'s counterclaims do not involve actions by [the plaintiff] that had some relation to this proceeding. Instead, the acts that form the basis of the counterclaims largely took place before this litigation began and involve the retention of commissions that [the defendant] claims should have been paid to [the defendant]. Indeed, [the defendant] alleges that it made a demand for the commissions months before this litigation was filed. The litigation privilege protects only acts that take place during the course of a judicial proceeding, not those that take place before one begins. . . . Only actions related to and taken during the course of litigation are protected by the privilege. Therefore, the litigation privilege does not bar [the defendant]'s counterclaims involving commissions withheld before the filing of the interpleader complaint.

(citations and internal quotation marks omitted).

Like the count in *Century Senior*, to the extent that Count II is based on Liberty Mutual's litigating the Florida indemnity action or Liberty Mutual's specific litigation tactics in the Florida indemnity action, the litigation privilege bars Count II.  However, in accord with *Century Senior*, MI Windows argues that "the conduct that gave rise to liability was Liberty's refusal to indemnify in contravention of its policies' coverage grants as construed under Florida law.  This conduct occurred in the regular course of Liberty's business, outside of litigation, and prior to the institution of" the 2007 Florida indemnity action.  (Doc. 34 at 15)  Count II corroborates and (elsewhere) comports with MI Windows' argument.  For example, Count II alleges that Liberty Mutual "[f]ail[ed] to promptly provide a reasonable explanation in writing . . . for denial of a claim . . . , as exemplified by Liberty Mutual's perfunctory August 2005 email stating without explanation that there was 'no coverage' for [two] settlements."  (Doc. 28 at 22)

Liberty Mutual argues that, because MI Windows' filed the civil remedy notice[6] underlying Count II nine months after the Florida indemnity action began, the civil remedy notice "necessarily addressed Liberty Mutual's alleged bad faith in not curing the [civil remedy notice] while and as part of the litigation proceedings." (Doc. 31 at 23)  Liberty Mutual's argument re-states the litigation privilege argument

---

[6] "A civil remedy notice is a condition precedent to bringing a bad faith claim under section 624.155. A claimant must file a notice with the Florida Department of Financial Services on a form provided by the department at least 60 days before filing a bad faith lawsuit. § 624.155(3)(a)–(b), Fla. Stat." *Vaughn v. Producers Agric. Ins. Co.*, 2015 WL 3919411, at *3 (N.D. Fla. Feb. 18, 2015).

rejected above.  Further, Liberty Mutual's argument fails to explain why the civil

remedy notice could not limit the bad faith described in the notice to bad faith that

occurred more than nine months earlier.

Liberty Mutual argues that "Liberty Mutual's litigation activities that happened

after [the civil remedy notice] was filed cannot form the basis of [Count II] because

they are not encompassed within" the civil remedy notice.  (Doc. 31 at 23)  As

discussed above, "the conduct that gave rise to liability . . . occurred . . . outside of

litigation[] and prior to the institution of" the Florida indemnity action.  (Doc. 34

at 15)  Further, "an insured is not required to incorporate every allegation from its

complaint into its civil remedy notice."  *Mayfair House Ass'n v. QBE Ins. Corp.*,

2009 WL 2132704, at *3 (S.D. Fla. July 14, 2009) (Hurley, J.).  Specifically, an

insured may allege facts in the complaint that "do not appear in the pre-suit notice" if

the allegations "relate to and expand upon the general allegations . . . charged in the

notice." *Mayfair House*, 2009 WL 2132704, at *3.

Finally, Liberty Mutual argues for "the Court [to] dismiss [several] damage

demands," including a demand for punitive damages.  However, punitive damages,

like other relief, "are not an independent cause of action.  Rather, punitive damages

are merely a remedy . . . asserted in conjunction with a substantive claim." *Philip

Morris USA, Inc. v. Hallgren*, 124 So. 3d 350, 355 (Fla. 2d DCA 2013) (Sleet, J.); *accord

Tarasewicz v. Royal Caribbean Cruises Ltd.*, 2015 WL 1566398, at *2 (S.D. Fla. Apr. 8,

2015) (Bloom, J.) ("[P]unitive damages are not a separate cause of action but part of

a plaintiff's prayer for relief."); *Foley v. Orange Cnty., Fla.*, 2012 WL 6021459, at \*7

(M.D. Fla. Dec. 4, 2012) (Dalton, J.) ("Punitive damages are a form of relief, not a

freestanding cause of action."); *Soffer v. R.J. Reynolds Tobacco Co.*, 106 So. 3d 456, 464

(Fla. 1st DCA 2012) (Lewis, J., concurring in part and dissenting in part) ("[P]unitive

damages are merely a remedy.").

   "[I]t need not appear that the plaintiff can obtain the particular relief prayed for

in the complaint, as long as the district judge can ascertain from what has been

alleged that some relief may be granted by the court."  Wright & Miller, *Federal

Practice and Procedure*, Vol. 5B, § 1357 (3d ed. 2015).  Thus, "courts will not dismiss

for failure to state a claim merely because the complaint requests inappropriate

relief . . . ." *Moore's Federal Practice*, Vol. 2, § 12.34[1][b] (3d ed. 2015).  In other

words, "[b]ecause a demand for relief is not part of a plaintiff's statement of the

claim, the nature of the relief sought is immaterial to the question of whether a

complaint adequately states a claim upon which relief can be granted."  *Charles v.

Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 631 (W.D. Va.

2014) (Urbanski, J.).  *Charles v. Front Royal Volunteer Fire & Rescue Department, Inc.*,

21 F. Supp. 3d 620, 631–32 (W.D. Va. 2014) (Urbanski, J.), offers further support:

> Rule 54 underscores the impropriety of dismissing requests for punitive
> damages under Rule 12(b)(6). Because Rule 54(c) directs courts to
> "grant the relief to which each party is entitled, even if the party has not
> demanded that relief in its pleadings," it makes little sense to require
> detailed factual allegations to support a demand for certain damages
> when such damages may ultimately be awarded even if they were never
> pled in the complaint.

(citations and internal quotation marks omitted).  Accordingly, Liberty Mutual may not move "to dismiss" a damages demand.

## CONCLUSION

Liberty Mutual's motion (Doc. 31) to dismiss is **GRANTED IN PART**.  Count II's miscellaneous claims, most apparent in Paragraph 68, are **DISMISSED**.  Liberty Mutual's motion (Doc. 31) is otherwise **DENIED**.  No later than **SEPTEMBER 2, 2015**, Liberty Mutual must answer the complaint.

ORDERED in Tampa, Florida, on August 12, 2015.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE