UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MI WINDOWS & DOORS, LLC, et al.,

    Plaintiffs,

v.                                                                      CASE NO. 8:14-cv-3139-T-23MAP

LIBERTY MUTUAL FIRE
INSURANCE COMPANY,

    Defendant.
_____/

## ORDER

MI Windows & Doors and MI Home Products ("MIWD") are window and sliding-glass-door manufacturers that purchased commercial liability insurance from Liberty Mutual Fire Insurance Company. In 2002, several non-parties sued MIWD in Alabama for defective windows and doors. Liberty defended MIWD in the Alabama actions, which in 2006 settled for approximately $4.6 million (approximately $3 million for damage to the windows and doors and $1.6 million in "consequential damages").

In 2007, after Liberty refused to indemnify MIWD despite a policy limit that exceeded $4.6 million, MIWD sued Liberty in Florida for breach of contract "for failing to fund and indemnify MIWD for the money expended to settle the five Alabama" actions. (Doc. 56 at 11) A final judgment determined that the insurance

policy excluded a claim for damage to MIWD's products but ordered indemnity for approximately $1.6 million in "consequential damages."

In 2014, in this action, MIWD sued Liberty to recover, among other things, the approximately $3 million not covered by the insurance policy. MIWD sues (Doc. 56) under Alabama law for "negligent failure to settle" and for "bad faith failure to settle" and sues under Florida law for Liberty's "statutory bad faith."[1] Liberty moves (Doc. 173) for summary judgment on all counts. MIWD moves (Doc. 172) for a declaration that Liberty "breached its duty of good faith and fair dealing by entirely failing to investigate the allegations of damages" in the Alabama actions and moves for summary judgment on Liberty's second (*res judicata* and collateral estoppel), fifth (failure to mitigate), and sixth (comparative negligence) affirmative defenses. (Doc. 172 at 2)

---

[1] Count III ("statutory bad faith") asserts two claims. Under Section 624.155(1)(b)(1), Florida Statutes, "any person may bring a civil action against an insurer when such person is damaged . . . [b]y the commission of any of the following acts by the insurer: . . . Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests[] . . . ." But a July 18, 2016 order dismisses the claim under Section 624.155(1)(b)(1).

The claim under Section 624.155(1)(a)(1) remains. (Doc. 102) MIWD alleges that "Liberty Mutual violated [Section 624.155(1)(a)(1)] by making material misrepresentations to MIWD regarding its right to coverage under the policy, with the purpose and intent of effecting settlement on claims, loss, or damage on less favorable terms than those contemplated by the 2002-03 Liberty Mutual policy; and by performing the following acts . . . ." (Doc. 56 at 20)

# DISCUSSION

**Liberty's motion for summary judgment.**

Liberty argues that MIWD's claims for failure to settle, pleaded under Alabama law, suffer from the fundamental flaw that all covered damages were within policy limits and reimbursed to MIWD in the Florida action, "leaving only non-covered items." (Doc. 173 at 2) Liberty adds that "[b]ecause the duty to settle non-covered items was solely MI[WD]'s under Alabama law, and the alleged breach of that duty is the predicate for all of MI[WD]'s claims and damages . . . its claims cannot proceed." (Doc. 173 at 2) Liberty contends (1) that the Alabama claims fail because Liberty was under no duty to settle non-covered damages and (2) that any damages both paid by MIWD in the Alabama settlements and covered by the policies were within policy limits and fully reimbursed to MIWD in the Florida action. MIWD responds (Doc. 179), among other things, that the Alabama claims are sufficient and "must be presented to a jury." (Doc. 179 at 8)

Negligent failure to settle requires the plaintiff to show that the insurer failed to exercise reasonable care in deciding not to settle. *Mutual Assur., Inc. v. Schulte*, 970 So. 2d 292, 297 (Ala. 2007). To succeed on a claim for bad faith, the plaintiff must show:

> (a) an insurance contract between the parties and a breach thereof by the defendant; (b) an intentional refusal to pay the insured's claim; (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason; [and] (e) if the intentional failure to determine the

> existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*National Security Fire & Casualty Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982).

In determining liability under Alabama law for negligence and for bad faith failure to settle, "the issue is simply . . . whether, considering all the circumstances, the insurer failed to exercise ordinary care on the one hand or good faith on the other." *Waters v. Am. Cas. Co. Of Reading, Pa.*, 73 So. 2d 254, 528 (Ala. 1953)  This is a question for the jury. *Waters*, 73 So. 2d at 529.

Liberty denies liability for negligent or bad faith failure to settle the Alabama actions and insists Liberty was under no duty to settle non-covered damages.  But MIWD does not allege that Liberty should have settled and paid both covered and non-covered claims merely to minimize MIWD's exposure to non-covered damages.  Instead, MIWD sues for damages incurred because of Liberty's purported failure to investigate and settle the Alabama actions when Liberty purportedly could and should have paid with a contribution from MIWD.  (Doc. 179 at 9)

Summary judgment (on the Alabama claims) in favor of Liberty is precluded by the existence of genuine disputes of material fact, which include whether Liberty under the "totality of the circumstances" failed to meet Liberty's obligations,[2]

---

[2] If an insurer defends a suit under a reservation of rights letter, the insurer has an "enhanced obligation of good faith toward its insured in conducting such a defense." To meet this obligation the insurer must: (1) thoroughly investigate the cause of the loss and the severity of the plaintiff's injuries; (2) "retain competent defense counsel for the insured"; and (3) "fully [inform] the insured not only of the reservation of rights defense itself, but of all developments relevant to his policy

whether Liberty's settlement decisions caused MIWD harm, and whether Liberty adequately investigated and provided MIWD with an adequate defense.

Also, moving for summary judgment on the Florida claim, Liberty argues that the Florida claim is "wholly barred" by litigation immunity because "[a]ll of the alleged misconduct took place squarely within the confines of, or was related to, the [state] court proceedings and is not actionable." (Doc. 173 at 3) As explained in an August 12, 2015 order (Doc. 40), which denies Liberty's motion to dismiss Count III on the ground of litigation immunity, litigation immunity fails to bar the Florida claim.

**MIWD's motion for partial summary judgment.**

MIWD moves for a declaration that Liberty breached the insurer's duty of good faith and fair dealing by failing to fully and timely investigate allegations of damages in the Alabama actions. MIWD asserts that "there is no material dispute concerning . . . the duty to fully and timely investigate claimed damages at [MIWD's] sole expense." (Doc. 172 at 2) Also, MIWD argues (1) that *res judicata* and collateral estoppel do not bar any portion of this bad faith action "because the relief MIWD seeks arises out of a completely separate set of injuries and circumstances than MIWD's contractual claims" and (2) that failure to mitigate and comparative negligence are not defenses to a bad faith claim. (Doc. 172 at 2)

---

coverage and the progress of his lawsuit." *L & S Roofing Supply Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 521 So. 2d 1298 (Ala. 1987).

**Liberty's purported failure to investigate the Alabama claims.**

MIWD argues that because of Liberty's alleged failure to investigate damage, because of "shifting" coverage positions, and because of "belated 'denial'" of coverage, MIWD eventually settled the remaining Alabama actions for "substantially more" than Liberty could have if Liberty had acted fairly, honestly, and with due regard for MIWD's interests. (Doc. 172 at 12) MIWD asserts that Liberty "failed" to investigate any of the alleged damages in the Alabama actions and states that the issue is whether Liberty, although "doing nothing" to investigate the Alabama claims, satisfied the insurer's duty of good faith and fair dealing. (Doc. 172 at 16). Liberty disputes MIWD's assertion that Liberty "did nothing" to investigate the claims in the Alabama actions and responds that "the manner in which Liberty handled the investigation of alleged . . . damages was consistent with its good faith duty to avoid harming the insured's interest." (Doc. 180 at 2)

Under both Florida and Alabama law, an insurer owes a duty of good faith to its insured. *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 672 (Fla. 2004); *Hartford Accident and Indemnity Co. v. Cosby*, 173 So. 2d 585, 592 (Ala. 1965). An insurer must "use diligence and care in the investigation." *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 483 F.3d 1265, 1276 (11th Cir. 2007). "Some courts, in weighing the responsibilities of the liability insurer, speak of bad faith; some speak of negligence; others use the two terms interchangeably. . . . [An insurer must] exercise [a] degree of skill, judgment, and consideration for the welfare of the insured which . . . a

skilled professional defender of lawsuits having sole charge of the investigation, settlement, and trial of the suit [is] expected to utilize[]." *State Farm Mut. Auto. Ins. Co. v. Hollis*, 554 So. 2d 387, 391 n.2 (Ala. 1989).

The parties dispute when Liberty should have investigated and "quantified" consequential damages. According to Liberty:

> MI[WD]'s current theory is that during the early stages when the associations were not even demanding consequential damages, Liberty should have . . . quantified those pre-[Hurricane Ivan] activities, because they could have been *potentially* sought against MI[WD] at some point in the future. . . . MI[WD]'s theory, however, ignores the obvious ramifications of such activities. At that time, the associations had not made any demands for such damages. If Liberty were to obtain information about the nature and amount of consequential damages that had been incurred, it could not do so without providing notice of the activity to . . . the condominium unit owners.

(Doc. 180 at 6) MIWD states that "it is undisputed that the Alabama [actions] alleged the existence of covered consequential damages resulting from MIWD's allegedly defective products as well as uncovered claims for the cost of replacing products" and argues that Liberty should have investigated potential consequential damages before the Alabama plaintiffs demanded consequential damages. (Doc. 172 at 17)

Liberty responds that in late 2005 (after Hurricane Ivan's passing) when the Alabama plaintiffs for the first time quantified and presented demands for consequential damages in three of the Alabama lawsuits, Liberty investigated these "new" demands. (Doc. 180 at 7) "Liberty determined that Ivan damages were attributable to a separate occurrence outside the policy period, and that pre-Ivan

- 7 -

damages were minimal and within MI[WD]'s deductibles." (Doc. 180 at 7). MIWD argues that because Liberty failed to investigate both covered and uncovered damages, Liberty deprived MIWD of the ability to contest or rebut the Alabama plaintiffs' damages and to consider settlement demands. (Doc. 172 at 18–19)

Liberty asserts that Liberty "adequately investigated" all five Alabama claims (Doc. 180 at 4) and that the record shows that Liberty undertook a "significant amount" of claim adjustment. (Doc. 180 at 5) Liberty asserts that Liberty's appointed counsel's investigation was "thorough and reasonable" (Doc. 180 at 2) and that Liberty never hindered or placed limitations on counsel's defense strategy. (Doc. 180 at 4) Liberty's claim adjustment included reviewing counsel's reports, "setting reserves" and advising MIWD of settlement opportunities, attending mediations, approving experts, reviewing defense budgets, and hiring additional counsel when required. (Doc. 180 at 5)

Liberty argues that the defense afforded to MIWD was "appropriate" (Doc. 180 at 8) and states that, at all times, counsel's defense strategy was "geared to protect MI equally from covered and non-covered claims . . . ." (Doc. 180 at 10) The existence of numerous genuine disputes of material fact precludes granting MIWD's motion for a declaration that Liberty breached Liberty's duty of good faith and fair dealing by failing to fully and timely investigate allegations of damages in the Alabama actions.

**Affirmative defenses.**

*Res judicata* **and collateral estoppel.**

MIWD argues that its claims are not barred by either *res judicata* or collateral estoppel because the relief MIWD "seeks arises out of a completely separate set of injuries and circumstances than MIWD's contractual claims." (Doc. 172 at 2) MIWD asserts that its claims for reimbursement of defense fees and costs that MIWD paid in the underlying Alabama actions "flow" from Liberty's purported misrepresentations and failure to act in good faith and not from Liberty's contractual obligation to perform; thus *res judicata* fails to apply because MIWD asserts entirely distinct extra-contractual bases for recovery of these damages. (Doc. 172 at 23) Also, MIWD argues that Liberty's collateral estoppel defense fails because "it is evident from the filings and the [Florida state court's] order on MIWD's motion for summary judgment that the issues of MIWD's entitlement to reimbursement of its defense fees and costs and Liberty's failure to provide an adequate defense were never litigated or adjudicated by the court." (Doc. 172 at 23)

Liberty responds that although MIWD "labels its current claims 'bad faith' and 'negligence,' discovery has revealed that MI[WD] incorporates into those overarching claims: (1) a contractual claim for breach of the duty to defend (inadequate defense); and (2) an Alabama claim for breach of the enhanced duty of good faith . . . . These claims are purely contractual claims that MI[WD] could have, but failed to bring in the" Florida action. (Doc. 180 at 18) Liberty moves to

- 9 -

"sever and dispose of the portions of MI[WD]'s claims that are premised on any matters involving the adequacy or quality of the defense or defense counsel's performance and investigation, and damage elements that MI[WD] either could have or did seek" in the Florida action. (Doc. 180 at 20)

"For the doctrine of *res judicata* to apply, several conditions must exist, which include: identity of the thing sued for; identity of the cause of action; identity of the parties and identity of the quality in the person for or against whom the claim is made." *Dadeland Depot, Inc. v. St. Paul Fire and Marine Ins. Co.*, 945 So. 2d 1216, 1235 (Fla. 2006). As explained in *Dadeland Depot*, the first two factors are not met if a policyholder sues its insurer for breach of contract and subsequently sues the same insurer for bad faith. Also, a plaintiff cannot raise a Florida "statutory bad faith" claim in a breach of contract claim because the action cannot begin before a judgment holds that the insurer breached its contractual obligations. *Dadeland Depot*, 945 So. 2d at 1235. MIWD's claims for reimbursement of fees and costs paid in defending the Alabama actions flow from Liberty's purported misrepresentations and failures to act in good faith and not from a contractual obligation to perform; MIWD asserts distinct "extra-contractual" bases for recovery of damages. (Doc. 179 at 18)

Collateral estoppel prevents the same parties from relitigating the same issues. *Department of Health and Rehabilitative Services v. B.J.M.*, 656 So. 2d 906, 910 (Fla. 1995). "The essential elements of the doctrine are that the parties and issues be

identical and that the particular matter be fully litigated and determined in a contest which results in a final decision of a court of competent jurisdiction . . . . [C]ollateral estoppel precludes relitigation of issues actually litigated in a prior proceeding." *B.J.M.*, 656 So. 2d at 910. MIWD's entitlement to reimbursement of MIWD's defense fees and costs and Liberty's purported failure to adequately defend were never litigated or adjudicated in the Florida action.

Liberty's argument that the claims for breach of the duty to defend and for breach of the enhanced duty of good faith are purely contractual claims that MIWD should have brought in the Florida action lacks merit. (Doc. 180 at 18–19) The portions of the claims that deal with the adequacy and quality of the defense afforded to Liberty are essential elements in determining whether Liberty acted in good faith toward MIWD. "[A] claim arising from bad faith is grounded upon the legal duty to act in good faith, and is thus separate and independent of the claim arising from [a] contractual obligation to perform." *Dadeland Depot*, 945 So. 2d at 1235. Liberty's second affirmative defense fails because the present claims were neither litigated nor adjudicated in the Florida action.

**Mitigation of damages.**

First, MIWD argues that a failure to mitigate damages by effecting a favorable settlement is not a defense to a bad faith claim. *See Weisler v. Safeco Ins. Co. Of Illinois*, 14-CV-81107, 2015 WL 11281290, at *3 (S.D. Fla. Apr. 9, 2015) ("The failure to mitigate is a defense relating to a breach of contract action."). Second, MIWD

argues that if an insurer undertakes to defend an insured against a claim, the insured loses control over settlement and the insured cannot settle without breaching the contract. (Doc. 172 at 23–25) MIWD asserts that because Liberty had full control over any settlement, MIWD had no duty or right to mitigate damages. Liberty responds that "Alabama and Florida courts deem the insured's conduct relevant to whether the insurer acted in bad faith." (Doc. 180 at 21) Also, Liberty asserts that because MIWD admits that Liberty permitted MIWD to independently settle the Alabama claims, MIWD had the duty and the ability to reduce its exposure to "non-covered" claims. (Doc. 180 at 21)

Alabama law recognizes failure to mitigate damages as an affirmative defense. *Prudential Ballard Realty Co. v. Weatherly*, 792 So.2d 1045, 1048 (Ala. 2000). An insured's duty to mitigate damages does not terminate when the insurer breaches a duty to timely settle a claim. *State Farm v. Slade*, 747 So. 2d 293, 321 (Ala. 1999); *Real Asset Management, Inc. v. Lloyd's of London*, 61 F.3d 1223, 1230 (5th Cir. 1995).

Citing a single case, *Caldwell v. Allstate Ins. Co.*, 453 So. 2d 1187, 1191 (Fla. 1st DCA 1984), Liberty asserts that failure to mitigate is a valid defense to a Florida bad faith claim. But *Caldwell* is distinguishable on the facts. In *Caldwell* the insured had a contractual right to competent legal representation by the insurer. *Caldwell* holds that even though the insurer failed to furnish counsel, the insured is under a duty to avoid the consequences of the breach by employing counsel himself.

*Caldwell* fails to establish a general rule that failure to mitigate is a defense to a Florida bad faith action. Liberty fails to identify any precedent that establishes failure to mitigate as a defense to a Florida bad faith claim.

**Comparative and contributory negligence**.

Affirmative defense six states that "MIWD's claims are barred, or any damages awardable must be reduced, based upon MIWD's comparative negligence." (Doc. 108 at 13) MIWD argues that comparative negligence is no defense to a claim of bad faith. (Doc. 172 at 25) Liberty responds that to the extent MIWD's damages were caused my MIWD's own negligence, Liberty is entitled to present evidence to a jury of the extent to which MIWD's damages were caused by MIWD's own conduct. (Doc. 180 at 20) Under Florida law, "comparative bad faith" or "comparative negligence" is no defense to a bad faith claim. *Nationwide Property & Cas. Ins. Co. v. King*, 568 So. 2d 990 (Fla. 4th DCA 1990); *Royal Indem. Co. v. Liberty Mut. Fire Ins. Co.*, No. 07-80172-CIV, 2008 WL 557963, at \*1 (S.D. Fla. Feb. 28, 2008).

Alabama law recognizes no "contributory bad faith" defense to a claim of bad faith. *White v. State Farm Fire & Cas. Co.*, 953 So. 2d 340, 351 (Ala. 2006) (holding that "we pretermit consideration at this time of whether Alabama should recognize 'contributory bad faith' on the part of the insured as a defense to the tort of bad-faith failure to pay an insurance claim, and if we should recognize that defense, what

effect it would have upon the tort of bad faith."). But Alabama law recognizes contributory negligence as a complete defense to a claim of negligence. *Kanellis v. Pacific Indem. Co.*, 917 So. 2d 149, 155 (Ala. 2005) ("Like any negligence claim, a claim in tort alleging a negligent failure of an insurance agent to fulfill a voluntary undertaking to procure insurance, such as that asserted by the [plaintiff] in this case, requires demonstration of the classic elements of a negligence theory[] . . . . Under Alabama law, however, contributory negligence is a complete defense to a claim based on negligence."). The plaintiff fails to identify any Alabama precedent that bars a defendant from pleading contributory negligence as a defense to a claim of negligent failure to settle. Liberty can plead contributory negligence as a defense to Count I. But Liberty cannot plead contributory bad faith as a defense to Count II and cannot plead comparative bad faith as a defense to Count III.

**Liberty's objections to the magistrate judge's rulings on discovery.**

Liberty objects (Docs. 133, 134, 153, 166) to six of the magistrate judge's orders on discovery. (Docs. 128, 129, 130, 147, 161, 162) Under Rule 72(a), Federal Rules of Civil Procedure, a party can object to a magistrate judge's order within fourteen days; the district judge must "modify or "set aside any part of the order that is clearly erroneous or is contrary to law."

A review of the orders (Docs. 128, 129, 130, 147, 161, 162) reveals that Liberty's objections are unfounded and that the orders are neither clearly erroneous nor contrary to law. Liberty's objections are **OVERRULED**.

CONCLUSION

MIWD's motion (Doc. 172) for partial summary judgment is **GRANTED-IN-PART**. MIWD's motion for summary judgment on affirmative defense two is **GRANTED**. MIWD's motion for summary judgment on affirmative defense five is **GRANTED-IN-PART**. As to Count III, Liberty cannot plead the affirmative defense of mitigation. MIWD's motion for summary judgment on affirmative defense six is **GRANTED-IN-PART**. As to Count II, Liberty cannot plead the affirmative defense of contributory bad faith, and as to Count III, Liberty cannot plead the affirmative defense of comparative bad faith. MIWD's motion for a declaration that Liberty breached the duty of good faith and fair dealing by failing to fully and timely investigate allegations of damages in the Alabama actions is **DENIED**.

Liberty's motion (Doc. 173) for summary judgment is **DENIED**. Liberty's motion (Doc. 230) "to be excused" from the March 2018 trial period is **DENIED AS MOOT**. No later than **JULY 20, 2018**, the parties must mediate with Peter J. Grilli. A jury trial will occur during the **AUGUST 2018** trial term.

ORDERED in Tampa, Florida, on May 18, 2018.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE