UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MI WINDOWS & DOORS, LLC,
f/k/a MI WINDOWS & DOORS, INC.
and MI HOME PRODUCTS, INC.,

    Plaintiff,

v.                       CASE NO. 8:14-cv-3139-T-23SPF

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

    Defendant.
_____/

**ORDER**

MI Windows & Doors moves (Doc. 189) for an order excluding the testimony of Liberty Mutual's designated expert John Catizone and limiting the testimony of Liberty's designated expert John Murphy. The motion is **DENIED**. However, Catizone's testimony must not assume the form "The law is X" or "The law was Y." Catizone must testify about his informed understanding of how a reasonable and informed insurer (or an insurer's employee) at the pertinent time and place would have understood and resolved the insurance questions presented by the historical circumstances in this action.

*****************************************

Also, Liberty moves (Doc. 190) to exclude or limit the expert opinion of Walter J. Andrews and the expert opinion of Charles M. Miller. MI Windows has

withdrawn the testimony of Walter J. Andrews.  As to the expert opinion of Charles M. Miller, the motion is **DENIED**.  MI Windows characterizes Charles Miller as an "insurance claims handling expert" and suggests his testimony will aid the jury's "understanding insurance industry standards for the fair and proper handling of claims, how Liberty's acts and omissions in handling the Alabama Cases violated those standards, and how Liberty's conduct was the result of its deliberate decisions which are indicative of its general business practices."

A detailed review of Miller's report suggests that his credentials, experience, knowledge, and the like meet at least the threshold to qualify him to opine to a jury on matters pertinent to Liberty's alleged bad faith in handling the Alabama claims.  Also, when, if, and to the extent that (but not before), punitive damages are at issue, Miller meets at least the threshold to qualify him to testify about "general business practice."

****************************************

MI Windows moves (Doc. 198) to preclude Liberty's presentation of evidence about:

1. MI Windows' size, financial status, and sophistication,

2. MI Windows' control over settlement and its alleged failure to mitigate damages,

3. the reasons Liberty denied coverage based on facts Liberty first learned, and positions first adopted years after MI Windows paid to resolve the Alabama actions,

4. MI Windows' motives and positions on coverage,

5. Liberty's reliance on defense counsel to fulfill the insurer's duty to investigate, and

6. MI Windows' suit against, and settlement with, Zurich and Fireman's Fund during the Coverage Cases and the parties' subsequent settlement.

As to MI Windows' size, financial status, and sophistication, the motion is **DENIED**.

As to MI Windows' control over settlement and its alleged failure to mitigate damages, the motion is **DENIED**. Liberty can introduce evidence to prove who exercised *actual* control over settlement and how the control was actually exercised.

As to the reasons Liberty denied coverage based on facts Liberty first learned and positions first adopted after MI Windows paid to resolve the Alabama actions, the motion is **DENIED**. Liberty can explain when MI Windows was told about the "known loss" provision and why Liberty placed no reliance on the provision in the Alabama actions. Liberty can introduce evidence of claims of fraud by MI Windows to explain Liberty's failure to contribute to the settlement in Alabama and otherwise to explain "claims handling." Liberty can introduce evidence of the Florida courts' divergent rulings to show that an issue was fairly or reasonably debatable.

As to MI Windows' motives and positions on coverage, the motion is **DENIED**. Undoubtedly in a bad faith action the primary focus is the acts and omissions of the insurer, but purposefully wrongful, deceptive, duplicitous, self-serving, or aggravating conduct by an insured that caused the insurer's conduct or added to the insured's damages is admissible to determine whether the insurer

breached the duty of good faith "under all the circumstances." Similarly, Liberty can defensively introduce evidence of MI Windows' claiming that damages from Hurricane Ivan fell outside Liberty's coverage and otherwise changing coverage positions in response to circumstances, including overt statements and actions by MI Windows.

As to Liberty's reliance on defense counsel to fulfill the insurer's duty to investigate, the motion is **DENIED**. Although the duty to investigate is non-delegable and although both the insurer and defense counsel owe a duty of loyalty to the insured, the causal relation between events in the litigation and the action of the insurer is a proper subject of evidence, especially if changing claims in the litigation caused changes in the implicated coverage.

As to MI Windows' suit against, and settlement with, Zurich and Fireman's Fund during the Coverage Cases and the parties' subsequent settlement, the motion is **DENIED**. If MI Windows claims that Liberty misrepresented that Hurricane Ivan damages occurred after expiration of, and were not covered by, Liberty's policy, Liberty can show that MI Windows shared the belief that Zurich, not Liberty, insured any loss.

*****************************************

Also, MI Windows moves (Doc. 199) for an order permitting the introduction into evidence of John Bogart's testimony, which occurred in an earlier action in

South Carolina. For the reasons explained in Liberty's response (Doc. 214), MI Windows' motion is **DENIED**.

*****************************************

Liberty moves (Doc. 202) to "exclude any evidence, testimony or argument relating to, premised on, or referencing: (1) the events in the South Carolina claims and subsequent litigation; (2) the MDL claims and subsequent litigation; (3) Liberty's underwriting of MI's policies and loss history; and (4) number of other lawsuits/claims involving Liberty and bad faith claim contingencies contained in its financial statements." (Doc. 202 at 23)

In support, Liberty argues, among other things, that the present action is principally directed at Liberty's handling of five actions against MI in Alabama; that the consideration of the South Carolina and MDL actions is irrelevant, confusing, and wasteful of time; that the South Carolina actions were resolved judicially and finally in favor of Liberty; that the MDL claims are settled and the claims fully released; and that the history of these and sundry other claims is admissible only, if at all, on the question of punitive damages.

In response (Doc. 216), MI begins by insisting that "MIWD's statutory claim" includes not only the five Alabama claims but "a decade of litigation between MIWD and Liberty here and in South Carolina" arising from "similar" policies as well as "the MDL and other claims/lawsuits."

In general, as to the question of Liberty's handling the Alabama claims, Liberty's motion (Doc. 202) is **GRANTED**. The evidence in this action must not unduly and prejudicially confuse, misdirect, or confound the jurors by mixing secondary and tertiary matters with the primary matter. However, if, when, and to the extent that punitive damages become an issue, the evidence excluded by granting Doc. 202 will become available to MI to prove Liberty's "general business practice."

*****************************************

Liberty moves (Doc. 203) to exclude twelve categories of evidence. MI responds (Doc. 215) in opposition. Each respective category identified (Doc. 203 at 2–3) by Liberty is resolved as follows:

1. <u>Performance of Alabama defense counsel</u>: **GRANTED-IN-PART, DENIED-IN-PART**. Liberty owed MI a duty to thoroughly investigate, supply competent counsel, and fully inform the insured of developments pertinent to the insured's policy. Neither Liberty nor any other insurer must supply the best possible counsel or must supply counsel whose representation is mistake-free. MI can offer a witness (if the witness appears on the witness list) qualified to assess the competence of counsel, as evidenced at the time Liberty selected and assigned counsel, to handle the assigned legal work. A detailed expert legal review of each legal act or omission of counsel is outside the scope of the present claims. However, if Liberty depended on, or appointed, counsel to perform a duty of the insurer, rather than a duty of

counsel, and if that duty was not performed in accord with the applicable standard, evidence of that failure is admissible to show the insurer's breach of a duty.

2. Conduct of other insurers: **GRANTED.**

3. Foreseeability of Ivan and Early Settlement: **GRANTED-IN-PART**. Evidence based on the prospective occurrence of Hurricane Ivan is excluded. The balance of the motion — directed to settlement prospects — is **DENIED**.

4. Liberty's control over settlement: **GRANTED-IN-PART, DENIED-IN-PART**. Any reference to the rulings of the South Carolina court are excluded. Otherwise the motion is **DENIED**.

5. <u>Attorney-client privilege</u>: **GRANTED-IN-PART**. Neither party should ask a question calculated to, or reasonably likely to, elicit a privileged communication (or an objection based on privilege). The fact that an attorney was consulted; the time, place, and day of the consultation; and whether the communication sought, or resulted in, legal advice is not privileged. The substance of the advice — whether elicited directly or indirectly — is privileged and an improper subject for examination.

6. Gary Firm Fees: **DENIED**.

7. Application of Florida Law (2002–2006): **GRANTED**.

8. Liberty's Litigation Tactics, et al: **DEFERRED**.

9. Liberty's Reserves: **GRANTED**.

10. Third-Party Witnesses in Coverage Case: **GRANTED**.

11. Fact Witnesses on Legal Obligation and Moral Duties: **GRANTED** as to Mr. Gary's conclusion about "the right thing to do." Otherwise, **DEFERRED**. If otherwise relevant, a witness's understanding of a state of affairs that influenced or controlled conduct is admissible as a statement of historical fact and not excludable as a legal or other opinion or conclusion.

12. <u>Inflammatory Analogies, et al</u>: **GRANTED**. All counsel must refrain at all times from comments, arguments, and the like that inflame, prejudice, divert, or mislead the jury. An evidentiary presentation is not an opportunity to gratuitously defame or deprecate an adversary. Counsel should elicit evidence by properly framed questions that are free of argumentative, inflammatory, editorial, or other improper content.

ORDERED in Tampa, Florida, on March 29, 2019.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE